**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| BERNABÉ ANTONIO BENITO AND JESUS JIMENEZ MARTINEZ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | |
| Plaintiffs, | |
| v. | **Case No. 1:20-cv-01039-SOH** |
| LOWRY FARMS, INC. AND MICHAEL CLAYTON LOWRY AKA CLAY LOWRY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT – CLASS ACTION

### PRELIMINARY STATEMENT

1.     This is an action by migrant agricultural workers employed pursuant to the H-2A temporary visa program to work planting sugarcane in Louisiana. Plaintiffs Bernabé Antonio Benito and Jesus Jimenez Martinez ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants Lowry Farms, Inc. and Michael Clayton Lowry aka Clay Lowry ("Defendants").  Plaintiffs seek redress on behalf of themselves and all other similarly situated workers for Defendants' violation of their rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and for breach of contract.

2.      This action is brought on behalf of a class that likely numbers more than 2,000 "guest workers" from Mexico who worked for Defendants planting sugarcane in Louisiana between 2016 and 2019. Plaintiffs and other class members are low-wage temporary workers brought by Defendants to the United States on time-limited work visas because of an apparent

1

shortage of U.S. workers to fill Defendants' available jobs. For years, Plaintiffs and the other class members have left their homes and families in Mexico and spent considerable money and effort to come to the United States to work for Defendants.

3.     Defendants failed to properly pay Plaintiffs and others similarly situated the federal minimum wage as required by the FLSA by taking *de facto* deductions from their wages for items primarily for the benefit of the employer, including visa fees, transportation expenses from Mexico to the United States, and border crossing fees.  Defendants also illegally shifted required business expenses such as return transportation from the United States to Mexico upon completion of the contract, resulting in violations of the FLSA minimum wage provisions as to Plaintiffs and others similar situated.   Defendants failed to pay Plaintiffs and others similarly situated the federal minimum wage for all hours they were employed, in further violation of the FLSA.

4.     Defendants also breached their employment contracts with Plaintiffs and the other class members.

5.     Plaintiffs, on behalf of themselves and the other class members, seek an award of money damages, declaratory and injunctive relief, statutory and/or actual damages and pre- and post-judgment interest to make them whole for damages each of them suffered due to Defendants' violations of the law.  Plaintiffs seek declaratory and injunctive relief to ensure that they and others are not subjected to similar practices in the future.

## JURISDICTION

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA").

7.     This Court has supplemental jurisdiction over the breach of contract claims pursuant to 28 U.S.C. § 1367(a), as the breach of contract claims arise out of the same facts which support the federal claims such that they form part of the same case or controversy.

8.     Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

9.     Venue in this district is proper under 28 U.S.C. § 1391.  Defendant Lowry Farms, Inc. has its principal place of business in Hermitage, Arkansas, and Defendant Michael Clayton Lowry aka Clay Lowry resides in Hermitage, Arkansas.

## PARTIES

10.     At all times relevant to this action, Plaintiffs and the other class members were admitted to the United States under the H-2A temporary foreign worker visa program, 8 U.S.C. § 1101(a)(15)(H)(ii)(a), administered in part by the United States Department of Labor (DOL).

11.     At all times relevant to this action, Plaintiffs and the other class members were employees of the Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

12.     At all times relevant to this action, Plaintiffs and the other class members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(g).

13.     Plaintiff Bernabé Antonio Benito is an individual who maintains his permanent residence in Mexico.  Plaintiff was employed by Defendants in 2018 pursuant to an H-2A visa and worked in Louisiana planting sugarcane.  Pursuant to 29 U.S.C. § 216(b), Plaintiff Bernabé Antonio Benito has consented in writing to be a party plaintiff in this FLSA action.  His written consent is attached to this Complaint as Exhibit A.

14.     Plaintiff Jesus Jimenez Martinez is an individual who maintains his permanent residence in Mexico.  Plaintiff was employed by Defendants in 2016 and 2019 pursuant to H-2A

3

visas and worked in Louisiana planting sugarcane.  Pursuant to 29 U.S.C. § 216(b), Plaintiff Jesus Jimenez Martinez has consented in writing to be a party plaintiff in this FLSA action.  His written consent is attached to this Complaint as Exhibit A.

15.     Defendant Lowry Farms, Inc. is an Arkansas corporation with its principal place of business in Hermitage, Arkansas.  Lowry Farms, Inc. primarily operates as a labor contractor supplying work crews to sugarcane farms in Louisiana to engage in the hand planting of sugarcane.

16.     Defendant Michael Clayton Lowry aka Clay Lowry is an individual who resides in Hermitage, Arkansas and is the owner and President of Defendant Lowry Farms, Inc.  During all times relevant to this action, Defendant Michael Clayton Lowry maintained operational control over Defendant Lowry Farms, Inc.

17.     At all times relevant to this action, Defendant Lowry Farms, Inc. was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that it operated a farm labor contracting business in Arkansas and Louisiana and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

## FACTS

### THE H-2A VISA PROGRAM

18.     The H-2A program allows employers who meet specific regulatory requirements to bring foreign guest workers to the United States to fill temporary agricultural jobs.  An employer in the U.S. may hire foreign guest workers to perform temporary agricultural labor if the DOL certifies that (1) there are insufficient available workers within the United States to perform the jobs; and (2) the employment of foreign guest workers will not adversely affect the wages and

working conditions of similarly situated U.S. workers.  8 U.S.C. §§ l101(a)(15)(H)(ii)(a) and 1188 (a)(l). Individuals admitted in this fashion are commonly referred to as "H-2A guest workers."

19.     Federal regulations at 20 C.F.R. § 655.122 establish the minimum benefits, wages, and working conditions that must be offered by an employer as part of an H-2A visa application in order to avoid adversely affecting similarly situated U.S. workers.

20.     An agricultural employer seeking a temporary labor certification under the H-2A visa classification must satisfy certain regulatory requirements by completing forms ETA 9142A, ETA-790, and ETA-790A which are intended to disclose all the material terms and conditions of employment that the employer will offer the H-2A workers.[1]

21.      The temporary labor certification application forms include an attestation by the employer that it will abide by applicable regulatory requirements, including but not limited to the following terms:

> a.     The employer will pay all workers the highest of the applicable adverse effect wage rate in effect at the time the work is performed, the prevailing hourly wage or piece rate, or the Federal or State minimum wage for every hour or portion thereof worked during a pay period. 20 C.F.R. §§ 655.120, 655.122(l);
>
> b.     A requirement that if the worker will be paid on a piece rate basis and the piece rate does not result at the end of the pay period in average hourly piece rate earnings during the pay period at least equal to the amount the worker would have earned had the worker been paid at the appropriate hourly rate, the worker's pay shall be supplemented at that time so that the worker's earnings are at least as much

---

[1] These forms may be found at https://www.foreignlaborcert.doleta.gov/form.cfm

as the worker would have earned during the pay period if the worker had been paid at the appropriate hourly wage rate for each hour worked. 20 C.F.R. § 655.122(l)(2);

c.      The employer will keep accurate and adequate records with respect to the worker's earnings, including the number of hours actually worked each day, the time the worker began and ended each workday, and the rate of pay (both piece rate and hourly, if applicable).  Such records are to be retained for not less than three years after the completion of the work contract.  20 C.F.R. § 655.122(j);

d.      The employer will furnish to the worker each payday an hours and earnings statement that contains information as to the hourly rate and/or piece rate of pay, the hours actually worked by worker, and the units produced each day if piece rates are used. 20 C.F.R. § 655.122(k);

e.      The employer will provide or otherwise pay for the transportation and daily subsistence costs for the worker to travel from the place in which they reside to the work location.  20 C.F.R. § 655.122(h)(1);

f.      The employer will provide or otherwise pay for the transportation and daily subsistence costs for the worker to travel back from the work location to the place in which they reside upon the completion of the work contract.  20 C.F.R. § 655.122(h)(2);

g.      An assurance that the employer will comply with applicable Federal, State, and local laws and regulations.  20 C.F.R. § 655.135(e);

h.      An assurance that the employer and its agents have not sought or received payment of any kind from any employee for any activity related to obtaining H-2A

labor certification, including payment of the employer's recruitment costs.  20 C.F.R. § 655.135(j); and

i.      An assurance that the employer has contractually forbidden any foreign labor contractor or recruiter (or any agent of such foreign labor contractor or recruiter) whom the employer engages, either directly or indirectly, in international recruitment of H-2A workers to seek or receive payments or other compensation from prospective employees.  20 C.F.R. § 655.135(k).

22.     The following adverse effect wage rates applied to H-2A workers employed in Louisiana between 2016 and 2019:

> 2016:  $10.69 per hour
> 2017:  $10.38 per hour
> 2018:  $10.73 per hour
> 2019:  $11.33 per hour.[2]

23.     The following daily subsistence rates applied to H-2A workers employed between 2016 and 2019:

> 2016:  $12.09 per day (81 Fed. Reg. 9885 (Feb. 26, 2016))
> 2017:  $12.07 per day (82 Fed. Reg. 17881 (Apr. 13, 2017))
> 2018:  $12.26 per day (83 Fed. Reg. 12410 (Mar. 21, 2018))
> 2019:  $12.46 per day (84 Fed. Reg. 10838 (Mar. 22, 2019)).

24.     Under the terms of the H-2A visa and the program's regulations, H-2A workers are permitted to work only for the specific employer that sponsored them.

---

[2]

https://www.foreignlaborcert.doleta.gov/pdf/2c.%20AEWR%20TRends%20in%20PDF_12.16.19.pdf

**DEFENDANTS' PARTICIPATION IN THE H-2A VISA PROGRAM**

25.     Defendant Michael Clayton Lowry has been utilizing the H-2A program since at least 2008, either through his current company, Defendant Lowry Farms, Inc., or through previous companies such as Clay Lowry Forestry, Inc.[3]

26.     Defendant Lowry Farms, Inc. applied for temporary labor certifications to employ foreign workers pursuant to the H-2A visa program to engage in sugarcane planting in Louisiana in 2016, 2017, 2018, and 2019.  These temporary labor certification applications, which were ultimately approved and certified by the federal government, identified Lowry Farms, Inc. as the employer of the H-2A workers and sought certification to engage in sugarcane planting for the following time periods and for the following number of individuals:

> 2016:  7/15/2016 – 10/20/2016 (684 H-2A workers)
> 2017:  7/15/2017 – 10/20/2017 (847 H-2A workers)
> 2018:  7/15/2018 – 10/20/2018 (866 H-2A workers)
> 2019:  7/15/2019 – 10/20/2019 (825 H-2A workers)[4]

27.     As part of the temporary labor certification applications identified in Paragraph 26, Defendants submitted the application documents described in Paragraph 20 to the appropriate governmental departments.  Those documents contained the terms and conditions of employment required by the federal regulations, as described in Paragraph 21, and also included an attestation that Defendants would abide by the applicable regulatory requirements pertaining to the H-2A temporary work program, as well as other federal and state laws.  *See also* 20 C.F.R. § 653.501.

---

[3]  *See* U.S. Department of Labor H-2A Disclosure Data files located at
https://www.foreignlaborcert.doleta.gov/performancedata.cfm

[4]  *See id.* (providing disclosure data of H-2A labor certifications for each year).

28.     In addition to the applicable regulatory requirements, Defendants' temporary labor certification applications for H-2A visas for 2018 also promised that "Employer guarantees first week pay of $386.28."

29.     In addition to the applicable regulatory requirements, Defendants' temporary labor certification applications for H-2A visas for 2019 also promised that "Employer guarantees first week pay of $407.88."

30.     Upon information and belief, in addition to the applicable regulatory requirements, Defendants' temporary labor certification applications for H-2A visas for 2016 and 2017 also promised that the Employer guaranteed first week pay of $384.84 and $373.68, respectively.

31.     The DOL reviewed and ultimately approved each of Defendants' temporary labor certification applications, allowing Defendants to bring H-2A workers to fill the labor needs set out in their temporary labor certification applications for the years 2016 through 2019.

32.     The DOL-approved temporary labor applications, the accompanying attestations, and the applicable regulatory requirements formed a contract between Defendants on the one hand and Plaintiffs and other class members on the other, with enforceable terms and conditions of employment, including an enforceable guarantee of wages no less than the federal minimum and H-2A adverse effect wage rate.

### THE RECRUITMENT AND VISA PROCESS

33.     Defendant Lowry Farms, Inc. sponsored the H-2A visas of Plaintiffs and other class members in order to fill its labor shortages. Plaintiffs' and other class members' H-2A visas allowed them to work only for Defendants.

34.     Plaintiffs and other class members maintain their permanent residences at various locations in Mexico, where they learned of the job opportunity with Defendants.

35.     Plaintiffs and other class members spent considerable sums of money to obtain their H-2A work visas and travel from their hometowns in Mexico to the United States to work for Defendants in Louisiana. Plaintiffs and other class members incurred these costs, which were primarily for the benefit of their employer.

36.     After being recruited to work for Defendants, Plaintiffs and other class members were told by Defendants' representatives when to arrive in Monterrey, Mexico for the processing of their H-2A visas.

37.     Plaintiffs and other class members incurred transportation expenses to travel from their hometowns to Monterrey, Mexico for the processing of their H-2A visas.  Those expenses were for the primary benefit of Defendants and were not properly reimbursed during the Plaintiffs' and other class members' first pay periods, or at any other time during the period of their employment.

38.     Plaintiffs and other class members incurred lodging expenses while they remained in Monterrey, Mexico, waiting for their H-2A visa applications to be processed.  Those expenses were for the primary benefit of Defendants and were not properly reimbursed during the Plaintiffs' and other class members' first pay periods.

39.     Plaintiffs and other class members paid a $190 fee as part of the H-2A visa application process.[5]  This fee was primarily for the benefit of Defendants.  Despite that fact, it was Defendants' stated written policy that the Plaintiffs and other class members would have to pay this fee.  This fee was never reimbursed during the Plaintiffs' and other class members' first pay periods.

---

[5]  *See* https://mx.usembassy.gov/embassy-consulates/monterrey/visas/h2-visas-in-monterrey/

40.    Plaintiffs and other class members incurred additional transportation expenses to travel from Monterrey, Mexico to the Defendants' work locations in Louisiana.  Those expenses were for the primary benefit of Defendants and were not properly reimbursed during the Plaintiffs' and other class members' first pay periods, or at any other time during the period of their employment.

41.    Plaintiffs and the other class members paid a fee of $6 for issuance of Form 1-94 as a requirement for entering the United States.[6]  That expense was for the primary benefit of Defendants and was not properly reimbursed during the Plaintiffs' and other class members' first pay periods.

### WAGES AND WAGE PAYMENT

42.    Plaintiffs and other class members worked for the Defendants planting sugarcane in Louisiana pursuant to contracts that Lowry Farm, Inc. entered into with various landowners. The contracts between Lowry Farms, Inc. and the landowners provided for payment to Lowry Farms, Inc. on a per acre basis.  In other words, Lowry Farms, Inc. charged landowners a set price per acre to plant sugarcane on their land, regardless of how long the planting of each acre of sugarcane might take.

43.    The Defendants primarily sought to pay the Plaintiffs and other class members "piece rate" earnings based on the number of acres of sugarcane planted each day.  Defendants did not properly record or report the amount of compensable time the Plaintiffs and the other class members worked during each workweek, resulting in the Plaintiffs and other class members being paid less than what was required by their H-2A work contracts and, at times, less than the FLSA minimum wage.

---

[6] *See* 8 C.F.R. § 103.7(b)(1)(ii)(D).

44.     Despite promising as part of the H-2A visa application process to pay the guaranteed minimum amounts for the first workweek of employment as described in Paragraphs 28-30, Defendants paid the Plaintiffs and other class members substantially less than those amounts for their first workweek of employment, in breach of the H-2A work contracts.

45.     Defendants failed to reimburse the Plaintiffs and other class members who completed 50% of their work contracts for the full amount of transportation expenses they incurred to travel from their homes in Mexico to Defendants' jobsites in the United States, and failed to pay them the full amount of required daily subsistence for all of the days spent travelling from their homes in Mexico to Defendants' jobsites in the United States, in breach of the H-2A work contracts and the regulations governing the H-2A program.  20 C.F.R. § 655.122(h)(1).

46.     Defendants failed to provide or otherwise pay for the full transportation costs home and daily subsistence to the Plaintiffs and other class members who completed the contract period, in breach of the H-2A work contracts and the regulations governing the H-2A program. 20 C.F.R. § 655.122(h)(2).

### COLLECTIVE ACTION/CLASS ACTION ALLEGATIONS

47.     Plaintiffs seek to bring their FLSA claims (Count I) as a representative action on behalf of "all H-2A temporary foreign workers admitted to the United States pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a), who were employed by the Defendants within three years of the filing of their consent to sue form." These workers are all similarly situated with respect to the pay practices challenged in this suit—*i.e.*, Defendants' practice of not properly reimbursing during the first workweek the visa, transportation, and related costs incurred by Plaintiffs and other H-2A workers as a condition of coming to work for Defendants, resulting in the H-2A workers earning less than the minimum wage during their first workweek; Defendants' practice of underreporting the hours

worked by H-2A workers and not supplementing their piece-rate earnings, resulting in the H-2A workers earning less than the minimum wage for all hours worked; and Defendants' practice of shifting its required business expenses for return transportation to Mexico upon the completion of the contract period onto its H-2A workers, resulting in their earning less than the minimum wage during their last week of employment.

48.     Plaintiffs' breach of contract claims (Count II) are brought by the Plaintiffs on behalf of themselves and all similar situated workers pursuant to Federal Rule of Civil Procedure 23(b)(3).

49.     The named Plaintiffs seek to represent a class consisting of:

> All individuals admitted as H-2A temporary foreign workers who were employed by Defendants for work in its sugarcane planting operations in 2016, 2017, 2018 and/or 2019.

50.     The Plaintiffs' proposed class meets the requirements of Federal Rule of Civil Procedure 23(a).

51.     **Numerosity**. The class members are so numerous and so geographically dispersed as to make joinder impracticable. The precise number of individuals in the class is known only to the Defendants.  However, the class is believed to include at least 2,000 individuals.  The class is comprised of indigent migrant workers who maintain their residences in locations throughout Mexico.  The class members are not fluent in the English language and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the class members makes the maintenance of separate actions by each class member economically infeasible.

52.     **Commonality**. There are questions of law and fact common to the class.  These common legal and factual questions include, but are not limited, to the following:

a.      Whether the Plaintiffs and other class members received less than the required Adverse Effect Wage Rate (AEWR) for every hour of work during their first workweek as a result of Defendants' failure to properly reimburse the Plaintiffs' and other class members for visa, transportation, border crossing, and related fees and expenses associated with obtaining H-2A visas and traveling to the United States to work for Defendants, in violation of the Plaintiffs' and other class members' contracts with the Defendants.

b.      Whether the Defendants failed to pay the Plaintiffs and other class members the guaranteed minimum wages promised in their contracts for the first week of work ($384.84 for 2016; $373.68 for 2017; $386.28 for 2018; and $407.88 for 2019).

c.      Whether the Defendants failed to pay the Plaintiffs and other class members the contractual AEWR for all compensable hours worked by failing to properly record all hours of work and by failing to properly supplement the Plaintiffs' and other class members' piece rate earnings.

d.      Whether the Defendants failed to maintain complete and accurate records regarding the work of the Plaintiffs and other class members.

e.      Whether the Defendants failed to provide the Plaintiffs and other members of the class with complete and accurate wage statements.

f.      Whether, upon completion of 50% of the work contracts, the Defendants failed to fully reimburse the Plaintiffs and other class members the full cost of their transportation expenses to travel from their homes in Mexico to the Defendants' work location in Louisiana, as required by their work contracts.

g.      Whether, upon completion of 50% of the work contracts, the Defendants failed to properly pay the Plaintiffs and other class members the daily subsistence amounts for each day they spent travelling from their homes in Mexico to the Defendants' work location in Louisiana, as required by their work contracts.

h.      Whether the Defendants failed to provide or otherwise pay for the Plaintiffs' and other class members' return transportation and daily subsistence for their travel back to Mexico upon completion of their work contracts.

53.     **Typicality**. The claims of the named Plaintiffs are typical of those of the other class members in that all of the named Plaintiffs and other class members had their wages reduced below the applicable AEWR in their first workweeks due to the Defendants' failure to properly reimburse them for expenses associated with obtaining H-2A visas and traveling to the United States to work for Defendants; all of the named Plaintiffs and other class members were not paid the guaranteed minimum wage amounts during their first workweeks that Defendants promised as part of the H-2A work contracts approved by the DOL; all of the named Plaintiffs and other class members were not provided appropriate subsistence payments for the total number of days they spent traveling to the United States to work for Defendants; all of the named Plaintiffs and other class members were not paid the AEWR for every hour of compensable work due to the Defendants' practice of not properly recording or reporting their hours of work and not supplementing their piece rate earnings; and all of the named Plaintiffs and other class members were not provided or otherwise paid for proper return transportation and subsistence upon completion of their H-2A contracts. These typical, common claims predominate over any questions affecting only individual class members.

54.      **Adequacy**. The named Plaintiffs will fairly and adequately represent the interests of the class. The named Plaintiffs have the same interests as the members of the class and will vigorously prosecute these interests on behalf of the class.  Counsel for the Plaintiffs is experienced in handling actions by H- 2A workers to enforce their rights under their employment contracts and has handled numerous class actions in the federal courts, including class actions on behalf of H-2A workers bringing claims similar to those presented in this action.  Plaintiffs' counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the class members under Federal Rule of Civil Procedure 23(b)(3).

55.      Plaintiffs' proposed Class meets the requirements of certification under Federal Rule of Civil Procedure 23(b)(3).

56.      **Predominance of Common Questions**.  The questions of law or fact common to the class, identified above in Paragraph 52, predominate over any questions affecting only individual members.

57.      **Superiority**. A class action under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia:*

> a.      The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

> b.      Many members of the class are unaware of their rights to prosecute these claims and/or lack the means or resources to secure legal assistance; There has been no litigation already commenced against the Defendants by the members of the class to determine the questions presented;

16

c.     It is desirable that the claims be heard in this forum because the Defendants reside in this district; and

d.     A class action can be managed without undue difficulty because the Defendants have regularly committed the violations complained of herein and were required to maintain detailed records concerning each member of the class.

## CAUSES OF ACTION

## COUNT I

## FAIR LABOR STANDARDS ACT

## (Collective Action against both Defendants)

58.     Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs I through 57 of this Complaint.

59.     This count sets forth a claim for declaratory relief and damages for the Defendants' violations of the minimum wage provisions of the Fair Labor Standards Act (FLSA).  This count is brought by Plaintiffs on behalf of themselves and other H-2A workers employed by Defendants who are similarly situated.

60.     The Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs and all others similarly situated at least $7.25 for every compensable hour of labor they performed during each workweek they were employed.

61.      The violations of the FLSA resulted, in part, from the Defendants' failure to reimburse Plaintiffs and others similarly situated for certain pre-employment expenses they incurred which were primarily for Defendants' benefit, reducing Plaintiffs' and other H-2A workers' wages below the minimum wage for the first workweek.  Those expenses included visa fees, border crossing fees, the full cost of travel from the Plaintiffs' and others similarly situated

homes in Mexico to the jobsites in Louisiana, and lodging expenses in Monterrey, Mexico while completing the H-2A visa application process, as set forth in Paragraphs 37-41.

62.     The violations of the FLSA resulted, in part, from the Defendants' practice of underreporting the hours that Plaintiffs and all others similarly situated were employed each workweek, and the Defendants' failure to supplement the piece-rate earnings of Plaintiffs and all others similarly situated to a rate equal to or exceeding the FLSA minimum wage for all hours they were employed.

63.     The violations of the FLSA resulted, in part, from the Defendants' practice of shifting to the Plaintiffs and others similarly situated the Defendants' business expenses associated with providing return transportation and daily subsistence payments upon completion of their H-2A contracts, reducing Plaintiffs' and other H-2A workers' wages below the minimum wage for their last workweek.

64.     Defendants' failure to pay Plaintiffs and others similarly situated their federally mandated minimum wages was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

65.     As a consequence of the Defendants' violations of the FLSA, the Plaintiffs and all others similarly situated are entitled to recover their unpaid minimum wages, plus an additional equal amount in liquidated damages, the costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 2l6(b).

<u>**COUNT II**</u>

**BREACH OF EMPLOYMENT CONTRACTS**

**(Rule 23 Class Action against both Defendants)**

66.     Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 65 as if fully set forth herein.

67.     This count sets forth a claim for damages resulting from Defendants' breach of its employment contracts with Plaintiffs and the other class members.

68.     The terms and conditions of employment contained in the Lowry Farms, Inc. H-2A certification applications and orders constituted employment contracts between the Defendants on the one hand, and the Plaintiffs and other class members on the other hand, the terms of which were supplied by the H-2A certification applications and orders as well as the federal regulations governing the H-2A program.

69.     Plaintiffs and the other class members obtained H-2A visas pursuant to the Lowry Farms, Inc. H-2A certification applications and satisfactorily performed all employment duties and responsibilities required of them under the employment contracts with Defendants.

70.     Defendants breached the employment contracts with the Plaintiffs and the other class members by:

a.      Failing to pay the Plaintiffs and other class members the required Adverse Effect Wage Rate (AEWR) for every hour of work during their first workweek as a result of Defendants' failure to properly reimburse the Plaintiffs' and other class members for visa, transportation, border crossing, and related fees and expenses associated with obtaining H-2A visas and traveling to the United States to work for Defendants;

19

b.      Failing to pay the Plaintiffs and other class members the guaranteed minimum wages promised in their contracts for the first week of work ($384.84 for 2016; $373.68 for 2017; $386.28 for 2018; and $407.88 for 2019);

c.      Failing to pay the Plaintiffs and other class members the contractual AEWR for all compensable hours worked by not properly recording or reporting all hours of work and by not properly supplementing the Plaintiffs' and other class members' piece rate earnings;

d.      Failing to maintain complete and accurate records regarding the work of the Plaintiffs and other class members;

e.      Failing to provide the Plaintiffs and other members of the class with complete and accurate wage statements;

f.      Upon completion of 50% of the work contracts, failing to fully reimburse the Plaintiffs and other class members the full cost of their transportation expenses to travel from their homes in Mexico to the Defendants' work location in Louisiana;

g.      Upon completion of 50% of the work contracts, failing to properly pay the Plaintiffs and other class members the daily subsistence amounts for each day they spent travelling from their homes in Mexico to the Defendants' work location in Louisiana, as required by their work contracts;

h.      Failing to provide or otherwise pay for the Plaintiffs' and other class members' return transportation and daily subsistence for their travel back to Mexico upon completion of their work contracts; and

i.      Failing to comply with the Fair Labor Standards Act, as set forth in Count I of this Complaint.

71.     Defendants' breach of the employment contracts caused Plaintiffs and the other class members substantial injuries, for which Plaintiffs and the other class members are entitled to actual and consequential damages and prejudgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the other class members pray this Court will enter an order:

a.   Entering a declaratory judgment that Defendants violated Plaintiffs' and other class members' rights under the FLSA, and that Defendants breached the employment contracts of the Plaintiffs and other class members;

b.   Permanently enjoining Defendants from further violations of the FLSA;

c.   Permitting this case to proceed as a collective action with respect to the claims set forth in Count I;

d.   Certifying this case as a class action in accordance with Federal Rule of Civil Procedure 23(b)(3) with respect to the claims set forth in Counts II, designating Plaintiffs as class representatives, designating counsel for Plaintiffs as counsel for the Class;

e.   Granting judgment in favor of Plaintiffs and others similarly situated and against Defendants Lowry Farms, Inc. and Michael Clayton Lowry aka Clay Lowry, jointly and severally, on Plaintiffs' claims under the FLSA and awarding each of them the amount of their unpaid minimum wages, along with an equal amount of liquidated damages;

f.   Granting judgment in favor of Plaintiffs and the other class members and against Defendants Lowry Farms, Inc. and Michael Clayton Lowry aka Clay Lowry, jointly and severally, for breach of the employment contracts with Plaintiffs, and awarding

21

each of the Plaintiffs and the other class members their actual and consequential

damages and prejudgment interest;

g.   Awarding Plaintiffs the costs of this action;

h.   Awarding Plaintiffs reasonable attorneys' fees;

i.   Awarding Plaintiffs pre-judgment and post-judgment interest, as permitted by law;

and

j.   Granting such other relief as the Court deems just and equitable.


Dated:      August 6, 2020                    Respectfully submitted,

                                              **/s/ James M. Knoepp**
                                              James M. Knoepp*
                                              Georgia Bar Number 366241
                                              Norma Ventura*
                                              Georgia Bar Number 941800
                                              Attorneys for Plaintiffs
                                              Southern Poverty Law Center
                                              P.O. Box 1287
                                              Decatur, GA 30031-1287
                                              Telephone:  (404) 521-6700
                                              Email:  jim.knoepp@splcenter.org
                                                        norma.ventura@splcenter.org

                                              Anne Janet Hernandez Anderson*
                                              Florida Bar Number 18092
                                              Attorney for Plaintiffs
                                              Southern Poverty Law Center
                                              P.O. Box 370037
                                              Miami, FL 33137-0037
                                              Telephone:  (786) 810-5673
                                              Email:  aj.hernandez@splcenter.org


* Motions for admission *pro hac vice* forthcoming